UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHASTA COLLINS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>HILTON MANAGEMENT LLC,<br><br>　　　　Defendant. | Case No. 21-cv-02523-JD<br><br>**ORDER RE MOTION TO REMAND**<br>Re: Dkt. No. 14 |

Named plaintiff Shasta Collins sued Hilton Management, LLC in the San Francisco Superior Court on behalf of a putative class of non-exempt employees for wage and hour violations under California law incurred while working at the Hilton San Francisco Union Square Hotel. Dkt. No. 1-1. Hilton removed to federal court under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d). Dkt. No. 1. Plaintiff has asked for the case to be remanded because Hilton has not plausibly established the $5 million amount in controversy required for CAFA jurisdiction. Dkt. No. 14-1 at 1. The parties' familiarity with the record is assumed. A remand is denied.

**DISCUSSION**

The Court has detailed the standards for CAFA removal in a recent case, and incorporates that discussion here. *See Anderson v. Starbucks Corp.*, No. 3:20-cv-01178-JD, 2020 WL 7779015, at *2 (N.D. Cal. Dec. 31, 2020) (and cases cited therein). Collins does not contest the minimum diversity of citizenship required under CAFA, nor does she contend that the putative class is less than 100 individuals. The only disputed issue is whether Hilton plausibly demonstrated that the amount in controversy exceeds $5 million.

Hilton has made an adequate showing on that score. To start, there is no presumption against removal when CAFA jurisdiction is alleged, as Collins suggests. Dkt. No. 14-1 at 2; *see Anderson*, 2020 WL 7779015, at *2 (under CAFA, "no antiremoval presumption applies.") (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)). To the contrary, Congress intended CAFA to be interpreted expansively in favor of removal. *Id*. (citing *Arias v. Residence Inn by Marriott*, 936 F.2d 920, 924 (9th Cir. 2019)).

To establish the amount in controversy required for CAFA jurisdiction, a defendant need only "'plausibly show that it is reasonably possible that the potential liability exceeds $5 million.'" *Anderson*, 2020 WL 7779015, at *2 (quoting *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020)). A defendant need not prove the jurisdictional amount with certainty, or make out the plaintiff's case for her. *Id*. (citing *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020)). Nor does the Court need to perform a detailed mathematical analysis to determine whether a defendant's showing is adequate. *Id*. "Rather, 'a defendant may rely on reasonable assumptions to prove that it has met the statutory threshold,' and on a 'chain of reasoning that includes assumptions' based on reasonable grounds." *Id*. at *3 (quoting *Harris*, 980 F.3d at 701, and *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015)). Reasonable grounds may be established on the basis of the complaint and extrinsic evidence. *Id*. "'[P]rospective attorney's fees must be included in the assessment of the amount in controversy.'" *Id*. (quoting *Arias*, 936 F.3d at 922).

A plaintiff need not introduce extrinsic evidence of her own to challenge the defendant's estimates. She may rely entirely on "'a reasoned argument as to why any assumptions on which [defendant's numbers] are based are not supported by evidence.'" *Id*. at *2. (quoting *Harris*, 980 F.3d at 700). That is what Collins has done here. She contests Hilton's evidence and reasoning, without introducing any evidence of her own.

Although the complaint alleges a variety of claims, Hilton has elected to estimate the jurisdictional amount based on meal and rest break violations, and waiting time penalties. *See* Dkt. No. 17 at 4-8. It also factors in an estimated 25% recovery for attorney's fees. *Id*. at 9-10.

1. <u>Meals and Rest Breaks</u>: Hilton has plausibly shown that the amount in controversy for the alleged meal and rest break violations is approximately $4.46 million. *Id*. at 8. Hilton's "labor and team member" director filed a declaration stating that payroll records indicated a putative class of approximately 1,737 current and former employees within the class definition alleged in the complaint. *See* Compl., Dkt. No. 1-1 ¶ 22; Bernier Decl., Dkt. No. 17-1 ¶¶ 4-5. This included full-time and part-time workers. Bernier Decl., Dkt. No. 17-1 ¶¶ 5-7. Hilton determined that the class period amounted to 159 work weeks, which is less than the actual number of weeks to account for reduced employment during the COVID-19 pandemic. Dkt. No. 17 at 8. Hilton posited an average hourly rate of $16.15 per employee for that period, *id*. at 7, which is the lowest end of a rate range of $16.15 to $62.44 for the putative class in the payroll records. Bernier Decl., Dkt. No. 17-1 ¶ 6. Hilton assumed one meal or rest period violation per week per putative class member. Dkt. No. 17 at 6. Straightforward arithmetic based on these data points yielded an estimated $4.46 million in meal and rest break penalties. *Id*. at 8.

Overall, Hilton used conservative numbers for wages, workweeks, and potential violations, based on its business records and reasonable inferences from the complaint. Collins's main objection to all of this is that Hilton unreasonably assumed each of the 1,737 putative class members experienced one meal or rest break violation per week. *See* Dkt. No. 18 at 7.

The point is not well taken. Collins says that the complaint qualifies the alleged meal and rest break violations with phrases such as "from time to time" and "periodically," *see, e.g.,* Dkt. No. 1-1 ¶¶ 8, 10, which she believes makes Hilton's reasoning inherently implausible. But the complaint also alleges that Hilton deprived workers of meal and rest breaks "systematically" on a "uniform" basis pursuant to a "strict corporate policy and practice." *See, e.g., id*. ¶¶ 8, 9, 16, 18. Collins says that she personally was "often" interrupted during rest breaks and went "many days" without even a partial lunch. *Id*. ¶ 8. The complaint alleges generally that, even when putative class members "ha[d] an opportunity to take their rest breaks," the breaks were noncompliant with California Labor Code sections 226.7 and 512 because they "were required to remain on the premises, on-duty, and on-call." *Id.* ¶ 10.

3

To be sure, "'regularly'" violating employees' meal and rest breaks does not mean that these violations "'always'" happened. *See Anderson*, 2020 WL 7779015 at *4 (quoting *Ibarra*, 775 F.3d at 1198-99). But Hilton did not assume a 100% violation rate at all times. It estimated a much lower rate of violations, which fully accords with the allegations in the complaint and is reasonable in these circumstances. Other courts have reached the same conclusion in similar cases. *See, e.g.*, *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016). Collins has not adduced a good reason to hold otherwise here, or shown that Hilton inflated its estimate in any way. *See Arias*, 936 F.3d at 927 ("the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover.") (emphasis in original).

2. <u>Waiting Time Penalties:</u> Hilton has also plausibly demonstrated that the amount in controversy for waiting time penalties under California Labor Code Section 203 is approximately $2.5 million. For this claim, Hilton determined from its payroll records that the putative class consists of 840 non-exempt employees (589 full-time and 251 part-time) whose employment ended with Hilton during the class period. Dkt. No. 17 at 9; Bernier Decl., Dkt. No. 17-1 ¶ 7. This smaller class is appropriate because only previously discharged employees may allege a Section 203 claim. Section 203 imposes a waiting time penalty equal to one day of pay for each day wages are late, up to a maximum of 30 days for an employer's failure to pay all wages owed to the employee immediately upon the employee's discharge, or within 72 hours of the employee's resignation. *See* Cal. Lab. Code §§ 201-203. Hilton again posited an average hourly rate of $16.15, and workdays of 7.5 hours for full-time employees and 3 hours for part-time employees, to estimate approximately $2.5 million in waiting time penalties. Dkt. No. 17 at 9. Hilton used shorter shift lengths of 7.5 and 3 hours to reach this estimate, even though its records showed that full-time employees worked up to 8 hours per shift and part-time employees worked up to 4 hours per shift. Bernier Decl. Dkt. No. 17-1 ¶ 7.

Collins repeats the objection that Hilton assumed too much here. *See* Dkt. No. 18 at 7. But why that is so is left unexplained. The inference of a Section 203 violation across 840 former employees reasonably follows from the premise that the putative class members experienced at least one wage and hour violation at some point in their employment. Collins appears to say that

4

Hilton should have finetuned its analysis to expressly determine which former employees were the subject of a noncompliant meal or rest break practice, Dkt. No. 18 at 8, but plausibility does not demand such a granular degree of specificity, and Hilton is not required to prove Collins's case to support removal.

3. Attorney's Fees: The complaint expressly seeks attorney's fees under California Labor Code Section 218.5 and related provisions. Dkt. No. 1-1 ¶ 3(c). Hilton properly included an attorney's fees estimate in determining the amount in controversy, and posits a 25% recovery on the waiting time penalty estimate of $2.5 million. *See* Dkt. No. 17 at 10. Hilton did not propose a fee award based on the meals or rest break claims, or other claims in the complaint. *Id*.

Collins says that the 25% recovery estimate is too generous, but a 25% award is reasonable in these circumstances. *See Anderson*, 2020 WL 7779015, at *4. Consequently, the Court credits approximately $626,000 in estimated fees toward the jurisdictional amount, which represents 25% of $2.5 million.

## CONCLUSION

Hilton has plausibly shown "that it is reasonably possible that the potential liability exceeds $5 million" in this case. *Greene*, 965 F.3d at 772. The case was properly removed under CAFA, and a remand is denied.

**IT IS SO ORDERED.**

Dated: July 15, 2021

JAMES DONATO
United States District Judge